IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISON

| | | |
|---|---|---|
| JANICE STEVENS<br>*Plaintiff* | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. |
| REGENCY INTEGRATED HEALTH<br>SERVICES, LLC | §<br>§<br>§<br>§ | |
| -and- | §<br>§ | |
| REGENCY IHS ADMINISTRATIVE<br>SERVICES, LLC<br>*Defendants* | §<br>§<br>§ | JURY DEMANDED |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Janice Stevens ("Stevens" or "Plaintiff") files this Original Complaint complaining of Regency Integrated Health Services, LLC and Regency IHS Administrative Services ("Regency" or "Defendants"), and for her causes of action, would show the Court as follows:

**I.
INTRODUCTION**

1. Janice Stevens worked as a registered nurse in a purely administrative and managerial role for Regency for nearly 15 years. On December 17, 2021, she began experiencing severe back pain, and was placed on bed rest pending a more fulsome diagnosis. Although Stevens attempted to return to work in December with requested accommodations, those requests were denied and instead Ms. Stevens went on FMLA. By March of 2022, Ms. Stevens was cleared by her physician to return to work with a restriction that she not lift more than 20 pounds for the next twelve months. Despite none of her various written job descriptions containing any lifting or carrying requirements; despite none of her essential job functions requiring her to lift or carry; and despite the fact that Ms. Stevens'

1

job over the more than a decade did not require her to lift or carry heavy objects, Regency terminated Ms. Stevens via letter on March 17, 2021. Regency's stated reasons for termination were its refusal to accommodate Mr. Stevens lifting restriction and the exhaustion of her FMLA.

2.  This is a very simple case. Ms. Stevens had a disability under the ADAAA, and she was terminated because of her disability. All that needs to be decided in this matter is whether lifting really was an essential function of Ms. Stevens' job at Regency and whether Regency failed to engage in the interactive process when it refused to offer Ms. Stevens any accommodation, and instead demanded she be *fully cleared* of all restrictions, even those that did not impact performance of the job she had before she went on leave, before returning to work.

## II.
## PARTIES

3.  Plaintiff is a resident of Texas.

4.  Defendant Regency Integrated Health Services, LLC, is a foreign limited liability company whose principal place of business is Baltimore Maryland. Defendant Regency IHS Administrative Services, LLC is a foreign limited liability company whose principal place of business is Baltimore Maryland. Both Defendants may be served through their registered agent for service of process, TRAC, The Registered Agent Company, 815 Brazos Street, Suite 500 Austin, Texas 78701.

5.  Whenever in this complaint it is alleged that Defendants committed any act or omission, it is meant that the Defendants' officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-

2

principals, agents, servants, or employees.

## III.
## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331.

7. Venue is proper in the Victoria Division of the Southern District of Texas because the alleged unlawful employment action took place in Victoria County. 42 U.S.C. 42 U.S.C. §§2000 et seq.

## IV.
## PROCEDURAL REQUISITES

8. Plaintiff filed a discrimination and disability complaint against Defendants under Charge Number 460-2022-05240 with the EEOC and the Human Rights Division of the Texas Workforce, on or about June 23, 2022.

9. On September 27, 2023, the EEOC determined that Regency violated the ADAAA when it failed to engage in the interactive process, retaliated against Stevens when she requested an accommodation, and terminated Ms. Stevens due to her disability.

10. Thereafter the parties engaged in conciliation through the EEOC which failed.

11. The EEOC issued its right to sue letter on November 9, 2023.

12. This action is filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue Letter from the EEOC. This action is also filed within two years after the adverse employment actions complained of occurred, and more than 180 days after the complaint was made to the Human Rights Division of the Texas Workforce Commission.

13. All conditions precedent to filing this cause of action have been met.

## V.
## **FACTS**

14. On February 5, 2007, Ms. Stevens began her employment at Regency. During her nearly 15 years of employment with Defendants Plaintiff worked in an administrative and managerial function. Her formal job title was "Corporate Quality Assurance Nurse Consultant." As is discussed in detail below, her job duties were administrative and supervisory and did not involve direct patient care or lifting.

15. On December 17, 2021, while Ms. Stevens was on duty at the nursing facility at Southbrooke Manor in Edna, Texas, she experienced severe back pain which necessitated a visit the Yoakum Community Hospital Emergency Room. There she was treated for back pain, medicated, and was advised to remain on bedrest for a week.

16. Ms. Stevens emailed and called her manager to report this medical emergency. During the phone call, Lourdes Montero— Plaintiff's direct supervisor—was clearly unhappy with the fact that Plaintiff was unable to immediately report to duty. She told Ms. Stevens that she could not believe Ms. Stevens was "doing this" and tried to make Plaintiff continue to work while on bed rest. Montero tried to insist that Ms. Stevens must still be available to report for duty to any of a variety of locations in case of any emergencies, despite this being a different job assignment from the one she had held for the past 15 years. Ms. Stevens, who was on bed rest, said she could not do that. Montero then hung the phone up on Ms. Stevens, and Defendants deactivated Plaintiff's access to the Regency intranet and company email.

17. The week following December 17, 2021, Plaintiff followed the instructions of her physician and remained on bedrest.

18. After completion of her bedrest, Plaintiff was cleared by her doctor to return to work as long as that work was limited to computer work. Ms. Stevens thought this should not pose an issue as computer work had been her primary job responsibility pre-injury. However, Ms. Montero refused to accommodate that request, accused Plaintiff of fabricating the injury, and instructed Plaintiff that if she was under restrictions, she needed to contact Human Resources.

19. Plaintiff immediately tried to contact Human Resources, although it was difficult to do so due to the holidays. Ms. Stevens spoke with human resources on approximately December 27, 2022. A Human Resource Clinical Regional Supervisor advised Plaintiff that she thought "it was not wise to go to any of the facilities", and that Plaintiff needed a confirmation from her doctor or care provider to affirm that she could return to work.

20. Ms. Stevens went back to her doctor, and after discussion was cleared to return to work so long as she was not required to lift heavy objects. Ms. Stevens relayed this to Ms. Montero who told Ms. Stevens that was ridiculous and that everyone had problems with their backs. She then refused to talk to Ms. Stevens any longer and told her that all further communication needed to be through Human Resources.

21. Ms. Stevens then called Human Resources again on December 30, 2021. She spoke with Sahvannah Cantu. During the call, Ms. Stevens expressed worry she would not be allowed back to work, and Ms. Cantu told her not to worry, that the restrictions were no problem, they just needed an end date. That same day Ms. Stevens, in consultation with her doctor, determined that there would be a two week end date for the restriction. Ms. Stevens called Ms. Cantu back that same day and told her that Regency would get an end date that day. Ms. Cantu told Ms. Stevens that all sounded fine and that Ms. Cantu would walk across the hall and get the head of HR on the phone. After a long hold, Ms. Cantu returned, told Ms. Stevens that the head of HR was not available, and then told

5

Ms. Stevens, just go on FMLA, it will save your job.

22. Ms. Stevens was then informed on January 3, 2022, that her request for accommodation was denied. This was curious. Afterall, her only restriction was not lifting, and lifting had never been part of her job. At around the same time MRI results came back, diagnosing Ms. Stevens with severe spinal neural foraminal narrowing with impingement of the nerve root. This medical condition limits certain major life activities, including lifting.

23. Left with no other options, and at Ms. Cantu's suggestion, Ms. Stevens went on medical leave under the Family Leave Medical Act (FMLA). On Ms. Stevens' FMLA paperwork her physician indicated that Ms. Stevens would need restrictions upon her return from work, first, a restriction on lifting more than ten pounds and second, a restriction against standing for more than one hour. Ms. Stevens' FMLA leave was approved.

24. Ms. Stevens' health improved while on leave. As the end of her leave approached, on March 11, 2022, Ms. Stevens submitted a return to work medical certification with only one restriction, that she not be required to lift more than twenty pounds for a period of one year.

25. Regency rejected this accommodation. Via letter on March 17, 2022, Regency indicated that the lifting restriction could not be accommodated, and that Ms. Stevens would be terminated unless she could be cleared for work without any restrictions. Since Ms. Stevens was not yet healthy enough to return to work without restrictions, she was terminated because of her disability effective March 23, 2022. It is worth noting, that Regency admits it terminated Ms. Stevens because of her disability. In the March 17, 2022, termination letter Regency specifically identifies the lifting restriction as the reason she is not being permitted to return to work, and specifically indicates that she will be terminated if she cannot obtain a "full release with no restrictions" by

March 23, 2022. *See* Exhibit 1.

26. It is an obvious lie that Regency could not accommodate a twenty-pound lifting restriction—if a lifting restriction in the contexts of Ms. Steven's job is even an accommodation. First, and perhaps most importantly, lifting heavy objects was not part of Ms. Stevens' job description, and was never a part of Ms. Stevens' job over her 15 years of employment with Regency, let alone an essential job function.

27. Ms. Stevens has seen two separate written job descriptions for her position. Ms. Stevens has a copy of one of the two written descriptions. It is attached as Exhibit 1. This job description recites that she will serve as an "advisor, trainer, educator and auditor." It goes on to say that she is "responsible for reviewing the operational systems of the facility, the maintenance of records, and personnel to promote adequate level of care to facility residents." It goes on to list nineteen specific job functions, none of which involve physical labor such as lifting or carrying, and none of which even involve assisting in direct patient care. In fact, the only places where patient care is mentioned in the job description are:

> 8. Observe staff performance during direct care activities (i.e., rounds, ADLs, med pass, meal service, etc.).

And:

> 16. Actively assist and participate in the enhancement of the lives of our residents through our dedicated approach to patient care and our census building program.

Neither of these require Ms. Stevens to provide direct care to patients, or otherwise lift or carry patients.

28. Ms. Stevens also recalls being shown a job description for her position during her many conversations with Human Resources which contained a physical restriction worksheet, and had a space for a lifting restriction which had been left blank, indicating the lack of a lifting requirement.

29. More practically, over the 15 years Ms. Stevens held this position, she was never asked or called upon to lift heavy objects, or to physically carry or manipulate patients.

30. Instead of accommodating Ms. Stevens' temporary disability, Ms. Stevens' direct manager, Lourdes Montero, was furious with Ms. Stevens for missing work around the Christmas holiday decided to terminate Ms. Stevens, and conspired with Human Resources to make sure that no restriction no matter how minor would be tolerated. This is patently obvious by Regency's statement that she had to be cleared to work *without any restrictions*.

## VI. COUNT 1— VIOLATIONS OF THE AMERICANS' DISABILITIES ACT AS AMENDED AND TEX. LAB. CODE (Disability Discrimination and Failure to Accommodate)

31. Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

32. As described above, Plaintiff suffers from severe spinal neural foraminal narrowing with impairment of the nerve root.

33. Plaintiff's condition is a disability under the ADAAA, as it substantially impacts several major life activities of Plaintiff including lifting.

34. Plaintiff's condition qualifies as a disability under the Americans with Disabilities Act, as amended.

8

35. Plaintiff was qualified for this position with or without an accommodation because Plaintiff had been successfully performing this job for years. Neither her written job description, nor her actual as experienced job duties ever required her to lift heavy objects. Accordingly, lifting was not an essential function of Plaintiff's job, and so Plaintiff could have returned to work and performed all of her essential job functions with the accommodation of not lifting more than 20 pounds.[1]

36. Defendants terminated Plaintiff's employment explicitly because of her disability.

37. Defendant also failed to accommodate Plaintiff.

38. As discussed above, Plaintiff was qualified person with a disability.

39. Plaintiff requested multiple accommodations under the Americans with Disabilities Act, as amended and the TEX. LAB. CODE §21.105, at multiple points in time as her condition improved. Specifically: (1) that she be allowed to return to work in purely administrative role; (2) that she be allowed to return to work with a lifting restriction of no more than 10 pounds and a standing requirement of less than one hour; and finally (3) that she be allowed to return to work with a lifting restriction of not more than 20 pounds for one year. Each of these requested accommodations disclosed her disability to her employer, and its limitations.

40. Not only were each of these requests rejected, Defendants also failed to engage in the interactive process, by never once proposing an alternative accommodation, and instead, simply rejected, without comment or suggestion, different accommodations suggested by the Plaintiff. Defendant could have accommodated plaintiff by modifying her job duties, if such modification

---

[1] In fact, it is unclear whether, given Ms. Stevens job, a lifting restriction is even an accommodation. In other words, Ms. Steven's could have returned to work, and continued to perform her job exactly as she had done for the past fifteen years, by never lifting anything.

was even required, to ensure that Plaintiff did not have to lift for the period of one year set forth in her return-to-work paperwork. For example, Defendant could have ensured that she was scheduled with other physically strong nurses or physically strong support staff who could perform any lifting that was required.

41. Regency totally failed to engage in the interactive process by never responding to any of Ms. Stevens various requested accommodations with any answer other than: Ms. Stevens be cleared to return to work *without restriction*. The inevitable conclusion is that Regency was unwilling to employ anyone with a disability of any description in this role.

42. As a result of Defendants' discriminatory actions, Plaintiff has suffered loss of wages and benefits, both in the past and in the future, as well as emotional pain, mental anguish, emotional and mental impairment and disability, suffering, inconvenience, loss of enjoyment of life in the past, and in the probability will continue to suffer in the future.

43. Additionally, Defendants engaged in the discriminatory practices alleged with malice or reckless indifference to Plaintiff's federally protected rights. Therefore, Plaintiff seeks an award of punitive damages.

### VII. COUNT 2—
### VIOLATIONS OF THE AMERICANS' DISABILITIES ACT
### (Retaliation)

44. At various points after Ms. Stevens became disabled, and missed work because of her serious medical condition, various individuals within Regency suggested— but never outright stated— that Ms. Stevens' job duties had changed since the onset of her disability. One example of this is Ms. Stevens' manager suggesting that Ms. Stevens could return to work for Regency only as a direct care nurse, a material change in her job duties, after Ms. Stevens' doctor-mandated bed rest was over.

45. Accordingly, to the extent Regency contends it changed Ms. Stevens's job duties after learning of her disability, Ms. Stevens alleges that these changes were made in retaliation for her requesting an accommodation, in violation of the ADAA.

46. As a result of Defendants' discriminatory actions, Plaintiff has suffered loss of wages and benefits, both in the past and in the future, as well as emotional pain, mental anguish, emotional and mental impairment and disability, suffering, inconvenience, loss of enjoyment of life in the past, and in the probability will continue to suffer in the future.

47. Additionally, Defendants engaged in the discriminatory practices alleged with malice or reckless indifference to Plaintiff's federally protected rights. Therefore, Plaintiff seeks an award of punitive damages.

## VI. COUNT 3—
## VIOLATIONS OF THE AMERICANS' DISABILITIES ACT AS AMENDED AND TEX. LAB. CODE (Regarded as Discrimination)

48. To the extent that Regency contends that Ms. Stevens is not actually disabled under the ADAA, at a minimum Regency regarded Ms. Stevens as disabled by refusing to allow her to return to work because of her lifting restriction.

49. Defendants terminated Plaintiff because of her perceived disability, in violation of the ADAAA.

50. As a result of Defendants' discriminatory actions, Plaintiff has suffered loss of wages and benefits, both in the past and in the future, as well as emotional pain, mental anguish, emotional and mental impairment and disability, suffering, inconvenience, loss of enjoyment of life in the past, and in the probability will continue to suffer in the future.

51. Additionally, Defendants engaged in the discriminatory practices alleged with

malice or reckless indifference to Plaintiff's federally protected rights. Therefore, Plaintiff seeks an award of punitive damages.

## IX.
## ATTORNEY'S FEES

52. As a result of Defendants' conduct, Plaintiff is entitled to recover from Defendants her reasonable attorney's fees for bring this action pursuant to the applicable statues, as well as the costs incurred in this action and any and all appeals of this action.

## X.
## JURY DEMAND

53. Plaintiff demands a jury.

## XI.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, as a direct and proximate result of Defendants' actions, respectfully requests the Court grant her the following relief:

a. For actual and liquidated damages for the period of time provide by the law including appropriate backpay and reimbursement for the lost pension, insurance and other benefits;

b. Past and future economic damages, including loss of future earning capacity, loss of reputation, and damage to future job prospects of Plaintiff;

c. Mental anguish, emotional distress and humiliation, past and future, suffered by Plaintiff or which will be suffered by Plaintiff;

d. Any other appropriate compensatory damages;

e. Punitive damages;

f.  All court costs incurred by Plaintiff in this lawsuit;

g.  Any expert witness fees incurred by Plaintiff in this lawsuit;

h.  Attorneys' fees incurred by Plaintiff in this action;

i.  Pre-judgment and post-judgment interest allowed for these claims; and

j.  Any and all further relief to which Plaintiff may be justly entitled at either law or equity.

**Dated:** December 8, 2023    Respectfully submitted

*/s/ Benjamin F. Foster*
**BENJAMIN F. FOSTER**
Texas Bar No. 24080898
ben@fosteryarborough.com
**FOSTER YARBOROUGH PLLC**
917 Franklin Street, Suite 220
Houston, Texas 77002
Telephone: (713) 331-5254
Facsimile: (713) 513-5202

***ATTORNEYS FOR PLAINTIFF***